**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **FEDEX GROUND PACKAGE SYSTEMS, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:22-cv-00656** |
| **v.** | ) | |
| | ) | **JURY DEMANDED** |
| **ROUTE CONSULTANT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF ROUTE CONSULTANT INC.'S MOTION TO DISMISS

Defendant Route Consultant, Inc. ("Route Consultant") has filed a motion to dismiss the Complaint (Doc. No. 1) filed by FedEx Ground Package Systems, Inc. ("FedEx Ground") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Pursuant to LR 7.01(a)(2), this memorandum of law is filed in support of the motion.

## I.     INTRODUCTORY STATEMENT

For the ground delivery of its packages in the United States, FedEx Ground depends upon approximately 6,000 independent contracted service providers ("CSPs") who own the delivery trucks and employ thousands of package delivery drivers. Complaint, ¶ 4. Route Consultant is neither a CSP nor a competitor of FedEx Ground. Instead, Route Consultant brokers the purchase and sale of CSP businesses. *Id.* at ¶ 13. Route Consultant also provides business advice to CSPs regarding how to operate their FedEx Ground routes safely and profitably. *Id.* at ¶ 9. As is evident from the Complaint's allegations, Route Consultant has been critical of FedEx Ground's unfair economic treatment of CSPs. Specifically, Route Consultant has repeatedly advised FedEx Ground that CSPs are struggling because of major price increases in their three (3) primary components of cost (equipment, fuel and labor), and has been critical that FedEx Ground has not responded to those concerns in any meaningful way.

48944561 v11

Apparently furious that it has been the subject of such criticism, FedEx Ground sued Route Consultant for alleged violations of the United States Lanham Act and the Tennessee Consumer Protection Act ("TCPA"). The gist of FedEx Ground's allegations is that Route Consultant has been falsely telling CSPs that their problems are greater than they really are and has mischaracterized FedEx Ground's response to the CSPs' concerns.

As explained herein, FedEx Ground's Complaint is an attempt to pound a square peg in a round hole. Neither the Lanham Act nor the TCPA create statutory causes of action for allegedly false speech. Neither act makes actionable common law defamation claims. Rather, the Lanham Act and the Tennessee Act regulate only false, "purely commercial" speech in the form of advertising and promotional statements intended to change a consumer's purchasing decisions. Read in context, Route Consultant's alleged statements are plainly not advertising and promotion of itself or its products and services. Moreover, it is entirely implausible that Route Consultant would disparage FedEx Ground as a means of promoting Route Consultant's business. Indeed, as FedEx Ground alleges, inconsistently with its disparagement theory, Route Consultant has promoted investments in FedEx Ground routes and, in normal market conditions, has touted "the opportunity to invest in FXG as 'like buying Apple at $1 a share.'" Complaint, ¶ 38.

The only plausible reason Route Consultant, through its President Spencer Patton, engaged in the alleged speech was because he was genuinely concerned about the financial health of the CSPs.[1] That is protected free speech outside the limited ambit of the Lanham Act and the TCPA.

Whatever FedEx Ground's motivation for filing the present action, the allegations of the Complaint do not state a cause of action under the Lanham Act or the TCPA. Advocacy on behalf

---

[1] Mr. Patton himself owned four separate CSPs, who had a total of seven (7) contracts with FedEx Ground, until FedEx Ground wrongfully terminated all seven (7) contracts the day after it filed the Complaint in this action.

of oneself or others is not false advertising. As demonstrated herein, the Complaint fails to state claims upon which relief can be granted because, when taken in context, Mr. Patton's opinions about the economic problems facing CSPs and FedEx Ground's response to their plight are plainly that – expressions of his genuinely held opinions and beliefs (informed by a wealth of his 10 years of personal experience and knowledge) of the struggles facing CSPs and FedEx Ground's responses to them. FedEx Ground has not plausibly alleged facts that, if proven at trial, establish Route Consultant engaged in advertising and promotion of Route Consultant's business, or that the alleged statements deceived Mr. Patton's intended audience, or that FedEx Ground sustained harm proximately caused by the statements. FedEx Ground's two (2) claims are ripe for dismissal.

## II.  THE ALLEGATIONS OF THE COMPLAINT

In paragraphs 47-56 of its Complaint, FedEx Ground recites numerous written statements and remarks made by Mr. Patton in writing, on-line, and at live events. FedEx Ground did not, however, provide the Court with copies of any of the written documents or transcripts of the other events, choosing instead to selectively pick and choose snippets from the referenced the documents and events that FedEx Ground believes are the most objectionable.   Because Route Consultant believes it is important for the Court to understand the audience to whom the statements were made and the context in which they were made, Route Consultant filed along with its Motion to Dismiss copies of the written documents and certified transcripts of the online and live events. *See* **Exhibits A - C** attached to the Motion to Dismiss. Specifically, FedEx Ground complains about statements made within the following documents or at the following events:

### A.  The Letter of Assurance.

FedEx Ground first complains about a "letter of assurance" dated July 20, 2022 that Mr. Patton sent to Raj Subramanian and John Smith, two members of the FedEx Ground leadership

team. The Letter of Assurance is five (5) pages long and is accompanied by a thirteen (13) page appendix. A copy of the Letter of Assurance and appendix are attached as **Exhibit A** to the Motion.

The letter begins with an introductory paragraph emphasizing the "win/win dynamic" between FedEx Ground and its CSPs. As the letter states:

> At the core of the relationship between FedEx Ground and its contracted service providers (CSPs), there must be a win/win dynamic. For significant stretches of FedEx Ground's CSP based model, that win/win dynamic has not only existed, but thrived. CSPs understand that FedEx Ground's first and highest obligation is to its shareholders: maximize profits, return capital.

Letter of Assurance at 1.

The letter then outlines its purpose as follows:

> 1. Establish a strong business case to FedEx Ground for increase in compensation for CSPs by a thoroughly documented analysis. This letter and appendix will prove that contractor costs have changed materially as a result of well publicized global price increases, and those cost changes are worthy of immediate adjustments from FedEx Ground.

> 2. Establish a clear timeline for network wide renegotiation. Prior letters of concern have called for open ended discussions that ultimately made no progress for a financial resolution.

> 3. Encourage FedEx Ground to make a courageous reassessment of the viability of Sunday delivery. Sunday delivery has been both an incredible struggle and a financial disaster for all parties involved.

Letter of Assurance at 2.

In the Letter, Mr. Patton describes his personal experiences in dealing with CSPs who are struggling. As he states: "Not a single day passes without my phone ringing with a story of yet another contractor who is financially collapsing under the weight of these dramatic cost changes that have gone unaddressed by FedEx Ground in 2022." Letter of Assurance at 2. The letter goes on to describe prior FedEx Ground precedent for addressing extraordinary circumstances such as those currently facing the CSPs. In his letter, Mr. Patton notes "during in the Covid Pandemic,

FedEx Ground offered a flat, across the board, six month compensation increase for its contractors in order to overcome the extraordinary conditions of that year." *Id.* at 2. He then notes that although "the changes experienced over the past 12 months…are magnitudes greater than what CSPs experienced in 2020, 'there has been no financial adjustment in any capacity.'" *Id.*

Mr. Patton then specifically addresses FedEx Ground's response to two (2) letters of concern sent to FedEx Ground in 2022 and collectively signed by over 1,000 contractors. The response is contained in an undated letter from FedEx Ground sent approximately one week after the Letter of Assurance.[2] Mr. Patton characterized FedEx Ground's response to the letter as corporate speak: "FedEx is listening, FedEx invites conversation." *Id.* Mr. Patton then notes those conversations did not result in financial adjustments for the CSPs who desperately needed it. Letter of Assurance at 3.

Mr. Patton then asked FedEx Ground to implement, as it had during the recent pandemic, a temporary measure to ease the financial difficulties facing CSPs and the 18-wheeler contractors (known as TSPs), and pleaded with FedEx Ground to implement the changes requested as follows:

> As a message directly to John Smith and Raj Subramanian, please accept my encouragement to use this opportunity to dramatically win over the hearts and minds of your CSPs. We have struggled mightily through this pandemic - working to deliver the purple promise as essential workers in spite of incredible challenges. …

Letter of Assurance at 3, 5.

### 2. The YouTube Videos.

FedEx Ground next complains about a series of YouTube videos posted on Route Consultant's website, all centered around and relating to the Letter of Assurance and follow up communications with FedEx Ground. The videos include the following:

---

[2] A true and correct copy of FedEx Ground's response is attached as **Exhibit D** to the Motion to Dismiss.

1) A 13-minute video titled "FedEx Ground: A Letter of Assurance";

2) A 3-minute video titled "In brief: A Letter of Assurance" that described the letter of assurance;

3) A 50-minute video titled "Discussion of Letter of Assurance to FedEx Ground;"

4) A 7-minute video entitled "A Follow-Up to our Conversations with FedEx Ground;"

5) An August 10, 2022 video soliciting nominations for a 10 person trade association to promote the common interests of its members; and

6) An August 24, 2022 video titled "2022 Expo Recap & Initial Address of FedEx Ground TSP Rate Announcement."

Certified transcripts of these videos are attached as **Exhibits B1-B6** to the Motion to Dismiss.

### 3. The July 20, 2022 Press Release.

Finally, FedEx Ground complains about a press release Route Consultant issued on July 20, 2022. A copy of the press release is attached as **Exhibit C** to the Motion to Dismiss. As the Complaint alleges, the Press Release "urged FedEx Ground to provide substantial financial remedies to its base of 6,000 plus contracted service providers' expenses ("CSPs") by November 25, 2022." The press release reiterated that "the CSP base will meet for their annual expo in Las Vegas this year, on August 20 and 21, and will elect a committee of ten (10) CSPs to speak as a unified voice to FedEx Ground." Complaint at ¶ 55. Although paragraphs 47-56 of the Complaint recite these allegedly offending communications in great detail, they fail to show how any of these communications constitute "false or misleading statements of fact concerning [Route Consultant's] product or [FedEx Ground's] product," as required to state a Lanham Act claim. *See American Council of Podiatric Physicians and Surgeons v. Amer. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999).

In paragraph 70 of the Complaint, FedEx Ground lists nine (9) specific statements it contends constitute "false or misleading statements" in support of its claims. The statements

generally fall into two (2) categories: first, statements regarding the financial stress placed on CSPs because of the current economic environment; and second, the lack of any meaningful response by FedEx Ground. The first category statements include the following from ¶ 70 of the Complaint:

- the 'average FedEx Ground business run by a CSP currently operates on profit margins below 0%'; (Complaint, ¶ 70 (c))

- since the Q4 of 2020, the industry has seen 'a 15% pullback on the value of routes because…there is more economic uncertainty, you have rising interest rates, you have the stock market that is declined meaningfully'; (*id.* at ¶ 70 (d))

- 'the current CSP financial model is collapsing due to substantial increases in the cost of fuel, labor and vehicles over the last 12 months'; (*id.* at ¶ 70 (e))

- pointing to 'soaring levels of CSP default rates as evidence of the current financial stress within the network'; (*id.* at ¶ 70(f))

- 'I am calling for FedEx Ground to recognize that its independent contractors are in financial distress'; (*id.* at ¶ 70 (g)).

The second category statements include the following from ¶ 70 of the Complaint:

- after referencing the economic changes over the past 12 months, stating 'there has been no financial adjustment in any capacity'; (Complaint, ¶ 70(a))

- after referencing two letters of concern that an anonymous group of FXG ISPs purportedly wrote earlier in 2022, stating that despite FXG's invitation for conversation 'in reality, those conversations did not result in financial adjustments for the CSPs who desperately needed it'; (*id.* at ¶ 70(b))

- 'FedEx Ground has not addressed the financial needs of contractors as a result of fuel prices doubling, wage cost going up, and vehicle costs going up'; (*id.* at ¶ 70 (h))

- 'Almost all of the other contractors that have renegotiation requests were also denied.' (*id.* at ¶ 70 (i)).

## III.  ARGUMENT AND LEGAL AUTHORITY

### A.  Standard of Review

In assessing whether the Complaint states a claim for which relief may be granted, federal courts apply the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). To

survive a Rule 12(b)(6) motion to dismiss following *Iqbal* and *Twombly*, a complaint must

"'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009). The court

"construes the complaint in a light most favorable to the plaintiff" and "accepts all factual

allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC,*

*LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "a court considering a

motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## B.  <u>The Complaint Fails to State a Claim for Relief Under Section 43(a)(1)(B) of the Act, 15 U.S.C. 1125(a)(1)(B).</u>

FedEx Ground first attempts to state a claim under Section 43(a)(1)(B) of the Act, 15

U.S.C. 1125(a)(1)(B).  The statute provides as follows**:**

(a)  **Civil Action**

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

**...**

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. 1125(a)(1)(B) (2012).

By the statute's unambiguous terms, for statements to be actionable under the Act, they

must be made "in commercial advertising or promotion."    *Id.*   Once a plaintiff shows the

statements were made in a "commercial advertising or promotion" (*i.e.* constitute commercial

speech"), a plaintiff must establish the following elements to support a claim: 1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and, 5) there is some causal link between the challenged statements and the plaintiff's harm. *American Council*, 185 F.3d at 613; accord *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 922–23 (3rd Cir. 1990). For the reasons set forth below, FedEx Ground has failed to plausibly allege statements that, if proven, would establish a Lanham Act violation.

### 1. FedEx Ground Does Not Adequately Allege Commercial Advertising or Promotion.

The Lanham Act does not federalize the cause of action for allegedly unfair criticism of a company or its products. Rather, it requires that the offending speech consist of "commercial advertising or promotion." The leading case in the Sixth Circuit on the meaning of "commercial advertising or promotion" is *Grubbs v. Sheakley Group, Inc.,* 807 F.3d 785 (6th. Cir. 2015). While *Grubbs* declined to join other circuits limiting Lanham claims to a plaintiff's actual competitors,[3] *Grubbs* held that "commercial advertising or promotion…must consist of commercial speech that is made for the purposes of influencing the purchasing decisions of the consuming public." *Grubbs*, 807 F.3d at 800. *Grubbs* agreed with the Second Circuit and other courts that "the touchstone of whether defendant's actions may be considered commercial advertising or promotion under the Act is that the contested representations are "part of an organized campaign

---

[3] *See, e.g. Gordon & Breach Sci. Publishers, S.A. v. American Inst. Of Pharm.*, 859 F. Supp. 1521 (S.D.N.Y. 1994); *Proctor & Gamble Co. v. Haugen,* 222 F.3d 1262, 1273-74 (10th Cir. 2000); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 735 (9th Cir. 1999); *Seven-Up Co. v. Coca-Cola Co.,* 86 F.3d 1379, 1384 (5th Cir. 1996); and *Porous Media Corp. v. Pall Corp.,* 173 F.3d 1109, 1121 (8th Cir. 1999).

to penetrate the relevant market." *Id. Grubbs* concluded: "We therefore define commercial advertising or promotion as: (1) commercial speech; (2) for the purposes of influencing customers to buy the defendant's goods or services; (3) that is disseminated either widely enough to the relevant purchasing public to constitute advertising or promotion with that industry or to be a substantial portion of the plaintiffs or defendant's existing customer or client base." *Id.* at 801.

Following *Grubbs,* a court in this district recently dismissed a Lanham Act complaint because it failed to sufficiently plead that the alleged speech constituted commercial advertising or promotion." *See Plateau Cas. Ins. Co. v. Securranty Inc.*, 2022 WL 2205263 (M.D. Tenn. June 1, 2022). There, the court rejected the plaintiff's conclusory allegations that the defendant's statements were used in commercial advertising or promotions. The court held that a "Lanham Act claim requires plausible allegations to suggest that [defendant] made the alleged representation 'for the purpose of influencing the purchasing decisions of the consuming public' and that 'the contested representations were part of an organized campaign to penetrate the relevant market intended to influence potential customers to purchase this product.'" *Id.* at 3.

Determining whether the challenged speech is commercial speech is a key, threshold issue to be decided in a Lanham Act case. This is true not only because only "commercial speech" can constitute "commercial advertising or promotion" under the Lanham Act, but because applying the Lanham Act to non-commercial speech raises serious First Amendment concerns. As the Sixth Circuit has recognized: "[t]he Lanham Act is constitutional because it only regulates commercial speech, which is entitled to reduced protections under the First Amendment." *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003) (citing *Central Hudson Gas & Elec. Corp. v. Pub.*

*Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980)).  Stated differently, application of the Lanham Act to non-commercial speech would violate the First Amendment right to free expression.[4]

Consequently "when a First Amendment challenge is raised in connection with a Lanham Act claim, the court must first determine whether the speech at issue … was 'commercial' for purposes of the Lanham Act." *United Inventory Servs., Inc. v. Tupperware Brands Corp.*, No. 08-1208, 2011 WL 13276821, at *3 (W.D. Tenn. Mar. 8, 2011) (citing *Taubman Co.*, 319 F.3d at 774 and *Savannah Coll. of Art & Design, Inc. v. Houeix*, 369 F. Supp. 2d 929, 943 (S.D. Ohio 2004)).

In *United Inventory Servs.*, the Western District of Tennessee explained the difference between commercial speech and non-commercial speech as follows:

> Although the boundary between commercial and non[ ]commercial speech has yet to be clearly delineated, the core notion of commercial speech is that it does no more than propose a commercial transaction.  ***'If speech is not purely commercial—that is, if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection.'***  'Negative commentary ... does more than propose a commercial transaction and is, therefore, non[ ]commercial.'

*United Inventory Servs.*, 2011 WL 13276821, at *3 (collecting cases from Sixth and Ninth Circuits, as well as the Northern District of Georgia) (emphasis added).

Moreover, when commercial speech and non-commercial speech are intertwined, then the speech is nevertheless entitled to First Amendment protection.  *See, e.g. Think Rubix, LLC v. Be Woke. Vote*, No. 2:21-CV-00559-KJM-AC, 2022 WL 1750969, at *3 (E.D. Cal. May 31, 2022) (holding in Lanham Act case "If speech is not "purely commercial"—that is, if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection"); *SB Diversified Prod., Inc. v. Murchinson*, No. 12-CV-2328-IEG MDD, 2013 WL 3831315, at *4 (S.D.

---

[4] The Sixth Circuit later summarized that *Taubman* "… addressed whether a business could use the Lanham Act to shut down public debate about its commercial activities."  *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 545 (6th Cir. 2014) (citing *Taubman Co.*, 319 F.3d at 778-79.)

Cal. July 23, 2013) (granting motion to dismiss in Lanham Act claim because the alleged statements did not constitute commercial speech, where such statements "criticize [the p]laintiff's product but do not propose any commercial transaction.") Put differently, if speech is "characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political or social issues," *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980), "it must be treated as a fully protected activity under the First Amendment," *Gaudiya Vaishnava Soc. v. City & Cty. of San Francisco*, 952 F.2d 1059, 1063–64 (9th Cir. 1990), *as amended on denial of reh'g* (Dec. 26, 1991).

Here, at the time of the events alleged in the Complaint, Mr. Patton was the owner of four (4) CSPs, and made his living brokering the sale of CSPs through Route Consultant. Neither his communications to FedEx Ground nor his communications with other CPSs propose a commercial transaction. Rather, they emphasize the difficulties faced by the CSPs, of which Mr. Patton was one, and criticize FedEx Ground for not providing any meaningful response to the CSPs' plight. *See* Motions to Dismiss, **Exs. A, B1-16 and Exh. C.** The only fair characterization of these communications is that Mr. Patton was advocating on behalf of his own CSPs and others who are suffering economic distress and that FedEx Ground has not adequately responded to their plight. At a minimum, Mr. Patton's statements are not "purely commercial" and therefore such statements are (a) entitled to full First Amendment protection and (b) beyond the ambit of the Lanham Act.

FedEx Ground's theory that Mr. Patton was creating a "fictionalized crisis" to drive business to the consulting side of Route Consultant's business is wholly and completely implausible. Devaluing CSPs by falsely understating their profitability would severely damage – not improve – Route Consultant's brokerage business. For this reason, the Complaint fails to plausibly allege that the speech about which FedEx Ground complains was made "for the purposes

of influencing customers to buy the defendant's goods or services." As a result, the speech does not constitute "commercial advertising or promotion" actionable under the Lanham Act.

### 2. The Complaint Does Not Adequately Allege Route Consultant Made False or Misleading Statements.

It is axiomatic that truth is a defense to any claim for "false advertising." Route Consultant recognizes, of course, that when considering a motion under Fed. R. Civ. P. 12(b)(6), this Court must "accept all factual allegations as true to determine whether a claim for relief is plausible on its face." Even when judged by this standard, the Complaint fails to state a claim under the Lanham Act because the statements alleged by FedEx Ground simply do not constitute "false or misleading statements concerning [FedEx Ground's] goods or services" as required for a Lanham Act claim.

Only statements of fact, not statements of opinion, are actionable under the Lanham Act. *American Council*, 185 F.3d at 614; *Service Jewelry Repair, Inc. v. Cumulus Broadcasting, LLC*, 145 F. Supp. 3d 737 (M.D. Tenn. 2015). Statements must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Service Jewelry*, 145 F. Supp. 3d at 747 (quoting *Pizza Hut, Inc. v. Papa John's Int'l, Inc.,* 227 F.3d 489, 496 (5th Cir. 2000)).

Once a court determines that a particular statement is one of fact and not opinion, the court must then determine whether the statement is literally false, or that the statement is literally true but misleading. Where statements are literally false, a violation may be established without evidence that the statements actually misled consumers. *See, e.g., Johnson & Johnson, Inc. v. GAC Int'l, Inc.,* 862 F.2d 975, 977 (2d Cir. 1988); *PPX Enters., Inc. v. Audiofidelity Enters.,* Inc., 818 F.2d 266, 272 (2nd Cir. 1987). A presumption of deception arises for publication of deliberately false comparative claims. *U–Haul Int'l, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1040 (9th Cir. 1986).

Where statements are literally true, yet deceptive, or too ambiguous to support a finding of literal falsity, a violation can be established only by proving actual deception (*i.e.,* evidence that individual consumers perceived the advertisement in a way that misled them about the plaintiff's product). A plaintiff relying on statements that are literally true yet misleading "cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react." *American Council*, 185 F. 3d at 614 (*quoting Sandoz Pharm. Corp. v. Richardson-Vicks, Inc*. 902 F. 2d 222, 229 (3rd Circ. 1990)). Whether a statement is too ambiguous to be literally false is a matter of law to be decided by the Court. *Service Jewelry Repair, Inc.*, 145 F. Supp. 3d at 746.

Additionally, courts have held that statements of puffery are so broad in scope, so general in nature and so exaggerated in content that no reasonable person would rely upon them, a defendant cannot be held liable for "puffing" under the Lanham Act. *Interactive Prods. Corp. v. a2z Mobile Office Sols., Inc.,* 326 F.3d 687, 699 (6th Cir. 2003) ("[M]ere puffery ... is not actionable under the Lanham Act."); *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1145 (9th Cir. 1997); *Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 945 (3rd Cir. 1993).

Courts in the Sixth Circuit have explained that statements regarding the cleanliness of a hotel (or lack thereof) convey "inherently subjective" concepts and constitute non-actionable opinions. *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 598 (6th Cir. 2013). Additionally, promises of efficiency and reliability "cannot form the basis for a fraud claim." *Ram Int'l Inc. v. ADT Sec. Servs., Inc.*, No. 11-10259, 2011 WL 5244936, at *6 (E.D. Mich. Nov. 3, 2011), *aff'd* 555 Fed. App'x. 493 (6th Cir. 2014). Courts are much more likely to find representations actionable when assertions make specific representations, especially numerically quantifiable representations. *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 875 (E.D. Mich. 2019); *see also Counts I v. Ford Motors, LLC,* 237 F. Supp. 3d 572, 597 (E.D. Mich. 2017). When judged by these standards,

none of the statements about which FedEx Ground complains constitutes "false or misleading statement" under the Lanham Act.

As is apparent from the full context of the alleged statements quoted above, FedEx Ground is complaining about statements that either relate to 1) the difficulties currently facing CSPs because of increased costs and operating expenses or 2) FedEx Ground's response to those concerns. FedEx Ground first directs its ire toward statements contained in the Letter of Assurance. As discussed above, the letter is five (5) pages long and contains a thirteen (13) page appendix. Motion to Dismiss, **Ex. A**. The letter generally describes the challenges facing CSPs in the current economic environment, requests across the board increases in light of those cost increases, and notes the lack of any meaningful response by FedEx Ground to those rising costs. The Letter of Assurance contains numerous statements that fall in the first category noted above – statements concerning the rising operating costs faced by the CSPs. *Id.* The Appendix cites empirical evidence (from reliable secondary sources) outlining those facts, which include the following:

- That the latest year over year inflation numbers came in at 9.1%, the highest since 1981 (Appendix at 2. Source: U.S. Bureau of Labor Statistics)

- That CSPs have 3 main cost buckets consisting of wages, fuel, and equipment/repair and maintenance. (Appendix at 3; Source: Route Consultant Internal Data Sets)

- That labor and recruiting costs have risen substantially from 2019 to 2022. (Appendix at 5; Source: U.S. Bureau of Labor Statistics)

- That fuel costs (in diesel and gas) have approximately doubled from 2019 to June 2022. (Appendix at 8; Source: US Energy and Information Administration).

- That truck shortages have caused the costs of new and used vehicles to increase by eighteen 18% and 50%, respectively since 2018 (Appendix at 10; Source U.S. Bureau of Labor Statistics)

- That the cost of typical vehicles used in a CSP fleet have increased by 48% since 2019. (Appendix at 11; Source: Invoices from Ford, Morgan Olson, and Utilimaster provided).

- That equipment and repair and maintenance costs increased on an average of 48% from 2019 to 2022. (Appendix at 11. Source: Internal Data).

Motion to Dismiss, **Ex. A** (Letter of Assurance, Appendix).

FedEx Ground has not alleged, and cannot allege, that the (verifiable) facts and statistics contained in the Appendix are false; indeed, the Complaint makes no effort to do so. Rather, FedEx Ground disagrees with the observations and conclusions drawn by Mr. Patton based on the uncontroverted data. In his Letter of Assurance and related videos, Mr. Patton reiterates these statistics and observes that the facts stated have had undeniable and devastating impacts on CSPs. Among other things, Mr. Patton notes the following things have occurred:

- the 'average FedEx Ground business run by a CSP currently operates on profit margins below 0%'; (Complaint, ¶ 70(c))

- since the Q4 of 2020, the industry has seen 'a 15% pullback on the value of routes because there is more economic uncertainty, you have rising interest rates, you have the stock market that has declined meaningfully'; (*id.* at ¶ 70(d))

- 'the current CSP financial model is collapsing due to substantial increases in the cost of fuel, labor, and vehicles over the last 12 months'; (*id.* at ¶ 70(e)); and

- pointing to 'soaring levels of CSP default rates as evidence of the current financial stress within the network' (*id.* at ¶ 70(f)).

Complaint, ¶ 70.

In an a failed effort to plead its case, FedEx Ground summarily alleges as follows: "the foregoing statements are false or misleading because, among other reasons, the reality is that FedEx Ground service providers earn average annual revenue approximately $2.3 million, a figure that has doubled over the past 4 years." Complaint, ¶ 71. FedEx Ground also quotes the opinion of an industry analyst that the ISPs "are certainly not businesses in distress." *Id.* at ¶ 72.

It is notable that FedEx Ground only points to a revenue number while Mr. Patton's statements relate to increased costs resulting in decreased profits for CSPs. To state the obvious,

a business can have $2.3 million in topline revenue but still struggle to be profitable. Moreover, whether an industry sector is "in distress" cannot, in any imaginable way be characterized as a statement of fact actionable under the Lanham Act. At best, it is a statement of Mr. Patton's opinion based upon objective facts.

Similarly, Mr. Patton's opinions regarding the adequacy of FedEx Ground's responses to these concerns are likewise statements of his opinion, and not "false or misleading statements of fact." Among the statements about which FedEx Ground complains are as follows:

- after referencing the economic changes over the past 12 months, stating 'there has been no financial adjustment in any capacity'; (Complaint, ¶ 70(a))

- 'FedEx Ground has not addressed the financial needs of contractors as a result of fuel prices doubling, wage costs going up and vehicle costs going up'; (*id.* at ¶ 70(h))

- 'Almost all the other contractors that had renegotiation requests were also denied.' (*id.* at ¶ 70(i)).

Complaint, ¶ 70.

These statements fare no better in supporting a Lanham Act claim because they are Mr. Patton's opinions regarding the adequacy of FedEx Ground's response to the concerns outlined in his letter. For example, in an effort to show the "falsity" of the statement in the Letter of Assurance that "there has been no financial adjustment in any capacity," FedEx Ground alleges in sum and substance that it has granted contract renegotiations for certain CSPs, contrary to Mr. Patton's statement of "no financial adjustment in any capacity." Motion to Dismiss, **Ex. A** at 2.

When Mr. Patton's statement is viewed in context, however, it is clear he is not alleging FedEx Ground never renegotiates individual contracts with CSPs. Rather, his point is that FedEx Ground's response has been inadequate because, among other things, it has not implemented across the board increases as it did in response to the recent pandemic. He notes in his letter:

> FedEx Ground has a precedent for addressing extraordinary circumstances. As recently as 2020, during the Covid-19 pandemic, FedEx Ground offered a flat, across the board six-month compensation increase for its contractors in order to overcome the extraordinary conditions of that year. The changes experienced over the past 12 months, though are magnitudes greater than what CSPs experienced in 2020. Yet, there has been no financial adjustment in any capacity.

Motion to Dismiss, **Ex. A** at 2.

Clearly, Mr. Patton's statement is that FedEx Ground has not made the type of across-the-board increases that it made in response to the pandemic.[5] In short, FedEx Ground has not alleged Mr. Patton has made the type of "specific and measurable claim" capable of being proved false or being reasonably interpreted as a statement of objective fact" required to support a Lanham Act claim. *See, e.g., Service Jewelry,* 145 F Supp. 3d at 747. FedEx Ground should not be allowed to "use the Lanham Act either as a shield from [Mr. Patton's] criticism, or as a sword to shut [Mr. Patton] up," *Bosley Med. Institute, Inc. v. Kremer*, 403 F.3d 672, 679-80 (9th Cir. 2005), or to otherwise "... shut down public debate about its commercial activities." *Innovation Ventures, LLC*, 763 F.3d at 545 (citing *Taubman Co.*, 319 F.3d at 778-79.)

### 3. Route Consultant's Statements About the Difficulties Facing CSPs Did Not Deceive the CSPs, who are Fully Aware of the Difficulties They Face.

If any of the above statements constituted statements of fact, instead of opinions, the Court then must determine whether any were literally false, or true but misleading. *American Council*, 185 F. 3d at 614. Route Consultant respectfully submits that none of the statements recited above

---

[5] FedEx Ground's other alleged facts also do not disprove Mr. Patton's conclusions. FedEx Ground states that "CSPs have requested mid-contract renegotiations for only about 10% of their agreements in 2022; FedEx Ground has consented to approximately 40% of renegotiation requests since July 1, 2022 and over 90% of those renegotiations led to agreements on new terms that resulted in higher contractual payments to the CSPs." Complaint, ¶ 71. Tellingly, FedEx Ground has limited its response to the time period after July 1, 2022, just 20 days before Mr. Patton sent the Letter of Assurance. Moreover, as FedEx Ground has approximately 6,000 CSPs, Fed-Ex's allegations indicate that it has granted higher payments to only approximately 216 of its 6,000 CSPs, or less than 4%.

are literally false. As discussed above, where statements are too ambiguous to support a finding of literal falsity, the plaintiff can state a Lanham Act claim only by alleging actual deception (that the speaker's intended audience was actually misled.) *Id.* As the Sixth Circuit stated in *American Council*:

> One of the key elements of a cause of action for misleading advertising under the Lanham Act is 'that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience.'

*American Council* 185 F.3d at 616 (*quoting U.S. Healthcare, Inc.*, 898 F.2d at 922).

*American Council* involved a Lanham Act claim brought by one certification board for podiatric surgeons against a competing board and professional association. The plaintiff challenged various statements made by the competing board arguably suggesting, among other things, that the competing board was the only recognized board for certification in podiatric surgery. *Id.* The *American Council* court held that the statements, taken as a whole, were at best ambiguous or true but misleading statements, so proof of actual deception was required. *Id.* at 615. Noting the sophistication of the intended audience, the *American Council* court held that the plaintiff failed to establish that the statements actually deceived the audience, as follows:

> Here, the intended audience is comprised of hospital administrators, insurance companies, and managed care organizations, a sophisticated group of professionals who presumably have familiarity with the issues involved in board certification. Because we conclude this intended audience would find all of the challenged statements to be at worst, either ambiguous or true but misleading, the District Court correctly reasoned that Plaintiff had to present evidence of actual deception in order to survive the ABPS's renewed motion for judgment as a matter of law and collect damages.

*Id.* at 616. Finding that the plaintiff failed to present sufficient evidence to find that alleged deception of consumers had caused it injury, the *American Council* court affirmed the district court's dismissal of the plaintiff's Lanham Act claims. 185 F.3d at 617, 624.

Here, the Complaint alleges Mr. Patton's intended audience was the CSPs. (The audience for the Letter of Assurance actually was the CSPs and TSPs…." (Complaint, ¶ 47)); ("Further demonstrating that the intended audience for the Letter of Assurance was CSPs and TSPs…" (*Id.* at ¶ 49)). With the CSPs as Mr. Patton's alleged intended audience, how can statements made regarding the financial distress facing them (or FedEx Ground's response to their distress) deceive or mislead the CSPs - the audience most knowledgeable about their own businesses and FedEx Ground's response to their plight? The idea that Mr. Patton could deceive them about the state of their own business is far too implausible to meet the *Twombly/Iqbal* pleading threshold. Indeed, as the Complaint itself notes, Mr. Patton invited the CSPs to do their own, independent "research and ask the hard questions that reveal the extent of the crisis. " (Complaint, ¶ 49).

### 4. There is No Causal Link Between the Statements and Any Harm to FedEx Ground.

The U.S. Supreme Court in *Lexmark Intern. Inc. v. Static Control Components, Inc*., 572 U.S. 118 (2014) has imposed a "proximate cause" limitation on the Lanham Act. The *Lexmark* court held that "the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct. That is ordinarily the case if the harm is purely derivative of the misfortunes visited upon a third person by the defendant's acts." *Lexmark*, 572 U.S. at 133. The Court held that "a plaintiff suing under Section 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133-34. The Court concluded that the plaintiff's alleged harm must fall within a protected "zone of interests." *Id.* at 128. Accordingly, to state a Lanham Act claim, a plaintiff must plead a direct causal link between the challenged statements and harm to the plaintiff. *Id.* at 133; *American Council,* 185 F.3d. at 613.

FedEx Ground's Complaint completely fails to allege this essential element of a Lanham Act claim. FedEx Ground alleges only that the financial press has picked up on the friction between FedEx Ground and the CSPs and reported on it. This reporting, FedEx Ground alleges "has eroded FedEx Ground's good will" and otherwise caused FedEx Ground harm. Specifically, the complaint alleges as follows:

> Bloomberg has likewise described a 'burgeoning feud' and 'ruined storm' between FXG and the CSPs and TSPs. Bloomberg has further reported CSPs and TSPs 'are threatening to ban together to demand more money amid rising costs' but 'FedEx Ground is refusing to negotiate with them as a group…'

> The unfavorable press has the tendency to create concerns at FXG's customers and to erode FedEx Ground's good will among its CSP and TSP network as well as in the market.

Complaint, ¶¶ 92 & 96.

This is not a harm proximately caused by Route Consultant and within the "zone of interests" protected by the Lanham Act. *Lexmark*, 572 U.S. at 128. FedEx Ground has done nothing but describe Bloomberg's accurate reporting. That FedEx Ground's "goodwill" may be eroding from its maltreatment of CSPs is not concrete financial harm proximately caused by Route Consultant. Instead, it is the very type of purely derivative and indirect harm that is not within the zone of protection afforded by the Lanham Act. Accord *Lexmark*, 572 U.S. at 133.

The remoteness of FedEx Ground's alleged harm is further demonstrated by the fact that tensions between the CSP network and FedEx Ground were aggravated long before Mr. Patton's alleged statements began on July 20, 2022. (Complaint, ¶ 46.) As noted in the Letter of Assurance (Motion to Dismiss, **Ex. 1** at 2), before the Letter of Assurance was sent, an anonymous group of more than 1,000 contractors, representing some 25,000 drivers, wrote letters of concern to FedEx Ground. This fact alone demonstrates that there is and has been friction between the CSP network and FedEx Ground. That FedEx Ground believes its goodwill is being "eroded" by third-party

reporting of this tension simply does not establish a causal link between Mr. Patton's statements and harm to FedEx Ground. Stated differently, the harm alleged by FedEx Ground is harm associated with the undeniable fact that these tensions exist, not by alleged false statements made by Mr. Patton regarding FedEx Ground's goods or services.

### C. The Complaint fails to State a Claim for Relief Under the Tennessee Consumer Protection Act. Tenn. Code Ann. 47-18-104, *et seq.*

Plaintiff also attempts to state claims under the "false advertising" component of the TCPA, Tenn. Code Ann. § 117-18-101, *et seq*. Specifically, FedEx Ground alleges a claim under Tenn. Code. Ann. §47-18-104(b)(8), the false advertising component of the TCPA, which provides as follows:

> (b) The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part: …
>
> 8. Disparaging the goods, services or business of another by false or misleading representations of fact;

FedEx Ground's TCPA claim fails for the same reasons its Lanham Act claim fails. In this circuit and elsewhere, claims brought under the false advertising components of state consumer protection laws are reviewed under the same framework as Lanham Act false advertising claims. *Louisiana-Pacific Corp. v. James Hardie Bldg. Products, Inc.*, 928 F.3d 514 (6th Cir. 2019) (applying Tennessee law). There, when affirming a decision from this Court denying the plaintiffs' request for a preliminary injunction on claims under the Lanham Act and the TCPA, the Sixth Circuit held:

> To prove false advertising under the Lanham Act, a plaintiff must first establish that the defendant made a 'false or misleading representation of fact' about a product. 15 U.S.C. § 1125(a)(1)(B). Similarly, to prevail on a statutory disparagement claim under the Tennessee Consumer Protection Act—a state law analog to a false advertising Lanham Act claim—a plaintiff must prove that the defendant made 'false or misleading representations of fact.' Tenn. Code. Ann. § 47-18-104(b)(8).

*Id.* at 517. The *Louisiana-Pacific* court held that the plaintiff failed to prove that defendant's representations were literally false or that they misled consumers. Specifically, the court stated that "the aggrieved must present 'evidence of some sort demonstrating that consumers were misled,' *id.* at 518, 'show[ing] how consumers actually do react' rather than 'arguing how consumers *could* react.'" *Id.* at 518. Accordingly, the *Louisiana-Pacific* court held because plaintiff failed to prove "literal falsity" or that consumers were misled due to the defendant's representation, the plaintiff failed to demonstrate a likelihood of success on its Lanham Act or TCPA claims and affirmed the district court's refusal to grant plaintiff's injunction. *Id.*; *accord Moore v. Weinstein Co., LLC*, 545 F. App'x 405, 412 (6th Cir. 2013) ("[t]he same analysis that applies to the federal Lanham Act claims also applies to the state claims of unfair competition under ... the [TCPA]."). In at least two prior cases arising from this district, the Middle District has applied the analysis applicable in false advertising cases filed under both the Lanham Act and the TCPA and dismissed claims under both. *See McDonald's Corp. v. Shop at Home, Inc.*, 82 F. Supp. 2d 801 (M.D. Tenn. 2000); *J. Commc'ns, Inc. v. Sabo*, No. 3:07-00605, 2008 WL 821524 (M.D. Tenn. 2008).

In *Shop at Home*, this court recognized that "the same analysis that applies to the federal Lanham Act claims also applies to the state claims of unfair competition under Tennessee common law and of violations of the … 'TCPA'". *Id.* at 816. This court found the plaintiffs failed to prove that defendants attempted to deceive or actually mislead consumers. *Id.* at 816-17. There, under Tennessee law regarding unfair practices, the analysis turned on whether the defendant created a likelihood of confusion among consumers. *Id.* As a result, the court held that plaintiff had failed to establish any likelihood of confusion and, accordingly, dismissed plaintiff's TCPA and Lanham Act claims. *Id.* at 810-811.

In *Sabo*, the plaintiff brought suit against defendant alleging violation of the Lanham Act and TCPA and claimed the defendant had engaged in false advertising in violation of the Lanham Act. *Sabo*, 2008 WL 821524 at *1. The *Sabo* court held that plaintiff identified only two allegedly false statements made by defendant and did not allege that these statements were likely to influence a potential customer's purchasing decision or intended to deceive recipients of the allegedly false statements. *Id.* at *5. Accordingly, since the court could not discern customers who were likely to be confused or influenced in their purchasing decision, the court dismissed the Lanham Act Claim. *Id.* at *7. Additionally, the court held with respect to plaintiff's allegations underlying its TCPA false advertising claim, "in interpreting state consumer protection acts, federal courts apply the likelihood of confusion standard" and that the TCPA claim was a "restatement of [plaintiff's] Lanham Act claim and this claim lacks merit." *Id.* Accordingly, the *Sabo* court held that plaintiff's TCPA and Lanham Act claims should be dismissed.

The same analysis applies here. Because FedEx Ground has failed to state a cause of action under the Lanham Act, its claim under the TCPA also fails as a matter of law.

## IV.    CONCLUSION

For all of these reasons, Route Consultant respectfully submits that the Complaint fails to state a claim upon which relief may be granted. The Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

*/s/ Brian C. Neal*
Brian C. Neal (BPR No. 022532)
Garry K. Grooms (BPR No. 12647)
Burr & Forman LLP
222 Second Avenue South, Suite 2000
Nashville, TN 37201
Tel.: (615) 724-3200
bneal@burr.com
ggrooms@burr.com

and

Stephen W. Vescovo, BPR No. 007426
Andrew N. Grams, BPR No. 018380
Paige I. Bernick, BPR No. 30071
424 Church Street, Suite 2500
Nashville, TN  37219
(615) 259-1366
agrams@lewisthomason.com
pbernick@lewisthomason.com
svescovo@lewisthomason.com

*Attorneys for Defendant Route Consultant, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon the parties listed below via the Court's CM/ECF system on this 19th day of September, 2022:

Jason W. Callen
K&L Gates
501 Commerce St., Suite 1500
Nashville, TN, 37203
Jason.Callen@klgates.com

Thomas J. Smith
Patrick McElhinny
Curtis B. Krasik
K&L Gates
210 Sixth Ave.
Pittsburgh, PA, 15222
Thomas.Smith@klgates.com
Patrick.McElhinny@klgates.com
Curtis.Krasik@klgates.com

*/s/ Brian C. Neal*